UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PAUL M.,<br>*Plaintiff*,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>*Defendant*. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | No. 3:25-cv-1319-SDV |

**RULING**

Plaintiff appeals from the decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits. The parties consented to transfer the case to the undersigned for all purposes. ECF 9. For the reasons below, Plaintiff's Motion to Reverse the Decision of the Commissioner, ECF 16, is DENIED, and the Commissioner's Motion to Affirm, ECF 22, is GRANTED.

## A. LEGAL STANDARDS

### 1. Disability

A claimant is disabled under the Social Security Act if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

### 2. Commissioner's five-step review

The Commissioner of Social Security is authorized to make findings of fact and decide disability applications, *see* 42 U.S.C. § 405(b)(1), in accordance with the five-step sequential evaluation process described in 20 C.F.R. § 404.1520. The Commissioner's authority to make

these findings and decisions is delegated to an administrative law judge ("ALJ"). *See* 20 C.F.R. § 404.929. If a claimant is dissatisfied with the ALJ's decision and the Appeals Council declines review or affirms, *see* 20 C.F.R. § 404.967, the claimant may appeal to the United States District Court. 42 U.S.C. § 405(g).

**3. Court's review on appeal**

A district court reviewing the Commissioner's final decision is performing an appellate function, *see Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981), and has the power to affirm, modify, or reverse the Commissioner's decision based on its review of the briefs and the administrative record. *See* 42 U.S.C. § 405(g). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

**B. BACKGROUND**

Plaintiff applied for Title II disability insurance benefits in December 2022 alleging a disability onset date of October 17, 2022, at which time he was 65 years old. R. 196. He previously worked as a maintenance electrician. R. 254. His impairments include chronic kidney disease resulting from long-term use of lithium to treat bipolar disorder. The ALJ found that both the bipolar disorder and kidney disease were severe impairments. R. 24. Plaintiff's treatment history also mentions other impairments that the ALJ found non-severe, including obesity, hypertension, hyperparathyroidism, esophagitis, Zenker's diverticulum, and obstructive sleep apnea. *Id*.

In September 2024, ALJ Ronald Thomas issued a written decision denying Plaintiff's application for disability benefits. R. 21–35. He determined that Plaintiff retained the residual

functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(c) with the following clarifications and limitations:

> The claimant should avoid hazards such as heights, vibration, and dangerous machinery but he is okay for personal automobile driving. The claimant may perform occasional bending, balancing, twisting, squatting, kneeling, crawling, and climbing but no climbing of ropes, scaffolds, or ladders. The claimant is capable of simple, routine, repetitious work that does not require teamwork or working closely with the public. The claimant may have occasional interaction with coworkers, supervisors, and the public.

R. 27.

The Court assumes familiarity with ALJ's decision and the medical treatment records, R. 375–1105, which are summarized in Plaintiff's brief, ECF 16-1 at 3–11. The medical record and the ALJ's analysis are discussed in more detail below as relevant.

## C. DISCUSSION

Plaintiff raises two claims of error: (1) the ALJ did not base his RFC determination on a competent medical opinion; and (2) the ALJ's RFC determination was not supported by substantial evidence. The Court concludes that remand is not warranted.

### 1. RFC determination differs from medical opinions

Plaintiff claims that the RFC determination was not based on a competent medical opinion. He notes that the ALJ discounted all the opinions addressing his physical limitations and, as to mental limitations, relied on the opinions of agency consultants who had not received records from his treating psychiatrist. ECF 16-1 at 14–16.

To the extent that Plaintiff is arguing that every aspect of an RFC determination must find support in a medical opinion, that is incorrect as a matter of law. Of course, an ALJ "cannot arbitrarily substitute his own judgment for competent medical opinion," *see McBrayer v. Sec'y of Health & Hum. Servs.*, 712 F.2d 795, 799 (2d Cir. 1983), but "[n]othing in the regulation

indicates that an ALJ's ultimate determination of disability or assessment of RFC must comport with a specific medical opinion." *Rubin v. Martin O'Malley, Comm'r of Soc. Sec.*, 116 F.4th 145, 155 (2d Cir. 2024) (rejecting argument that ALJ committed categorical error by denying application without medical opinion to support that decision).

Next, to the extent that Plaintiff is arguing that the ALJ "substituted [his] own judgment to interpret the raw medical data, ECF 16-1 at 14 (quoting *Wagner v. Secretary of Health and Human Services*, 906 F.2d 856, 862 (2d Cir. 1990)), the contention is unfounded.

Regarding physical limitations, the ALJ considered the April 2024 opinion of treating nephrologist Dr. Negulescu, who said only that Plaintiff was likely to be absent from work for medical reasons one day per month and was incapable of even low-stress work. R. 1009. The ALJ found this opinion less persuasive because it was inconsistent with stable findings shown in Dr. Negulescu's own treatment records.[1] R. 32. The other opinions on physical limitations came from agency consultants who reviewed the file at the initial and reconsiderations levels. Although the ALJ discounted their opinions, he actually did so in Plaintiff's favor: whereas the consultants opined that Plaintiff had the exertional capacity for heavy work, R. 77 (Dr. Gerrish, Jan. 2023), R. 88 (Dr. Harkin, Sept. 2023), the ALJ concluded that Plaintiff could do only medium work.

Regarding mental limitations, agency consultant psychiatrist Dr. Hill opined in April 2023 that Plaintiff's only limitations were with following schedules and carrying out detailed

[1] In June 2023, Dr. Negulescu noted CKD IV (stage 4 chronic kidney disease) with fluctuations of renal function, and high uric acid and creatinine. She encouraged more hydration. R. 858. In October 2023, uric acid had improved while creatinine remained high. Urine analysis was unremarkable with no hematuria, pyuria, and low specific gravity. Dr. Negulescu again recommended increased fluid intake. R. 786. In February 2024, she noted good fluid intake and "CKD IV stable" with normal electrolytes; controlled hyperuricemia; and renal cyst with no suspicious findings. R. 776.

instructions. R. 80. In August 2023, agency consultant psychologist Dr. Decarli opined that Plaintiff could do simple, complex and detailed work for two-hour periods in an eight-hour day with adequate attention, concentration and pace, with occasional problems with prolonged concentration and sustained pace. R. 90. Once again, the ALJ diverged from those opinions in Plaintiff's favor, adding some socialization restrictions to the RFC determination. R. 31. The record also includes the opinion of Plaintiff's treating psychiatrist Dr. Jaziri, who opined in May 2024 that stress would frequently interfere with attention and concentration, that his mental condition would prevent him from performing unskilled work, that he would be off-task more than 30% of a workday, and that he would be absent or unable to complete work at least five days per month. R. 1072. The ALJ found the opinion unpersuasive because it was inconsistent with Dr. Jaziri's own treatment notes.[2] R. 32.[3]

---

[2] Dr. Jaziri's records from May 2024 are outliers in Plaintiff's otherwise unremarkable psychiatric treatment during the relevant period. In addition to his opinion dated May 8, 2024, a visit note from May 1, 2024, states: "INTERVAL HISTORY: The patient is unable to perform activities on a regular, reliable and sustained schedule in regular work setting," and adds: "Mr. Mazzarella appears irritable, unhappy. and tense. Appears anxious. . . . Signs of moderate depression are present. . . A short attention span is evident. He is easily distracted." R. 1057. However, the only note with similar findings ("irritable, and appears anxious, and tense . . . moderate depression") is from May 3, 2022. R. 1076–77. In the fourteen subsequent visits across two years from May 25, 2022, through April 3, 2024, Plaintiff presented as euthymic with no depression or elevation and no signs of anxiety, and those notes contained no suggestion that Plaintiff was unable to sustain a work schedule. R. 1078, 1081, 1082, 1092, 1094, 1084, 1086, 1088, 1090, 1096, 1098, 1100, 1102, 1104. In fact, in the April 3, 2024, visit, Dr. Jaziri noted: "INTERVAL HISTORY: Mr. Mazzarella's behavior has been stable and uneventful and he denies any psychiatric problems or symptoms." R. 1104. The May 2024 opinion is plainly inconsistent with this history.

[3] The ALJ also considered the April 2023 consultative examination report by psychologist Dr. Murphy, R. 32, but that report did not offer any opinion on Plaintiff's mental limitations. R. 468. Instead, Dr. Murphy simply reported test results and recommended a neurological or neuropsychological evaluation to assess cognitive functioning and memory. *Id.* Consequently, the ALJ did not err in not assigning any particular weight to the report.

Plaintiff does not dispute the weights that the ALJ assigned. Instead, he contends that the RFC determination was not based on a medical opinion. Not only is that not *per se* error, *see Rubin*, 116 F.4th at 155, but the contention is not even factually correct. Insofar as the agency consultants opined that Plaintiff could perform heavy work, those opinions would also support the Plaintiff's ability to perform medium work, as the ALJ concluded. *Cf.* 20 C.F.R. § 404.1567(d) ("If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work."). The same is true of the mental RFC: the consultants' broad opinion that Plaintiff could perform work with no social limitations supports the ALJ's narrower conclusion that Plaintiff could perform work that required only occasional social interaction and did not require teamwork or working closely with the public. Also, as to Plaintiff's argument that the agency consultants' opinions on mental limitations were unreliable because they lacked records from psychiatrist Dr. Jaziri,[4] ECF 16-1 at 14, he presents this as a theoretical defect and does not point to any specific information in Dr. Jaziri's records that might have tangibly altered their opinions or the RFC determination.[5] *Cf. Lucius R. v. O'Malley*, No. 3:22-cv-1312-MPS, 2024 WL 1200181, at *15 (D. Conn. Jan. 22, 2024) (Farrish, M.J.) (in context of claim that ALJ failed to develop evidentiary record, claimant has burden "to show that he was prejudiced by the absence of these allegedly missing records") (collecting cases). In any event, because the ALJ's RFC determination was more favorable to Plaintiff than the agency consultants' opinions, remand for further evaluation of those unfavorable opinions would not result in a finding of

[4] The consultants both explained: "Dr. Jaziri prescribes meds, he has not responded to multiple requests." R. 76, 78, 87, 89.

[5] In fact, the only parts of Dr. Jaziri's records that might conflict with the agency consultants' opinions are the May 2024 visit note and opinion, which are outliers as explained in footnote 2 above.

disability and so would be futile. *See*, *e.g.*, *Jose F. v. O'Malley*, No. 22-cv-325F, 2024 WL 4210900, at *8 (W.D.N.Y. Sept. 17, 2024) (remand not warranted for alleged error in formulating RFC that was more restrictive than medical opinion because correcting that error would still result in finding of disability); *Adam T. v. Comm'r of Soc. Sec.*, No. 21-cv-1170 (FJS)(ATB), 2023 WL 2466690, at *8 (N.D.N.Y. Jan. 3, 2023) (same); *Sarah C. v. Comm'r of Soc. Sec.*, No. 5:19-cv-1431 (FJS), 2021 WL 1175072, at *11 (N.D.N.Y. Mar. 29, 2021) (same). For these reasons, Plaintiff's first claim of error is unavailing.

**2. Substantial evidence for RFC determination**

Plaintiff's other claim is that the RFC determination is not supported by substantial evidence. Specifically, Plaintiff's brief argues that he lacked the exertional capacity for medium work[6] due to edema, back pain, and sleepiness. ECF 16-1 at 12–13. The argument is not persuasive.

The sum total of medical evidence regarding edema is as follows. In August 2022, Plaintiff presented to his internist Dr. Zafar with continuing bilateral pedal edema and diarrhea. R. 1045. Dr. Zafar attributed it to Plaintiff's blood pressure medication and, because "the blood pressure is running pretty good," he discontinued it and advised Plaintiff to wear compression stockings during the day. R. 1048. Nine days later, Plaintiff reported during a gastroenterology consult that the edema and diarrhea were resolved. R. 509.

The next year, in January 2023, Dr. Zafar noted "Trace edema bilaterally." R. 502. In February 2023, Plaintiff reported mild ankle edema, to nephrologist Dr. Negulescu, who

[6] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

recommended elastic stockings. R. 499. Four months later, in June 2023, he again noted mild ankle edema and Dr. Negulescu recommended good hydration and a low-salt diet. R. 494.

In the following year, Dr. Negulescu's February 2024 note did not include any references to swelling or edema, in contrast with the 2023 notes. R. 772–776. Two months later, in an April 2024 kidney disease questionnaire requested by Plaintiff, Dr. Negulescu noted only "Occasional edema due to kidney disease." R. 1008.

All other medical notes from 2022 to 2024 state "no edema."

Regarding back pain, Plaintiff's brief cites an MRI from 2012 showing a moderately large right paracentral L4-L5 disk extrusion and milder degenerative changes at L5-S1 with moderate right foraminal stenosis. R. 587. Plaintiff also cites his hearing testimony that he had a "little bit [of pain] in the back where my kidneys are." R. 53.

Regarding sleepiness, Plaintiff's brief cites his hearing testimony that he falls asleep sometimes and naps every day. R. 60–61. He also cites a note by Dr. Negulescu that his medications could cause sleepiness or tiredness. R. 1008.

Simply put, the evidence cited in Plaintiff's brief does not show a lack of substantial evidence to support the ALJ's medium work conclusion. The Second Circuit has instructed that "whether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis retained). Furthermore, "[t]he substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis retained). The evidence marshaled in Plaintiff's brief, as listed above, does not come close to overcoming that deferential standard. In fact, the

cited records actually provide substantial support for the ALJ's medium work conclusion insofar as they indicate that Plaintiff's edema, back pain, and sleepiness symptoms were not particularly severe. Moreover, as the ALJ noted, Plaintiff reported in April 2023 that he does yard work and maintenance on his house inside and out. R. 465. He also testified in May 2024 that he cuts his half-acre lawn with a push mower, his hobby is "doing things around the house," he traveled to Italy for a week to attend a wedding and see sights, and he played pickleball twice a week. R. 50–52, 61. All this constitutes substantial evidence that edema, back pain, and sleepiness do not preclude Plaintiff from performing medium work.

### D. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Reverse the Decision of the Commissioner, ECF 16, is DENIED, and the Commissioner's Motion to Affirm, ECF 22, is GRANTED.

This is not a recommended ruling. The consent of the parties allows a magistrate judge to direct the entry of a judgment of the District Court in accordance with the Federal Rules of Civil Procedure. Appeals from this judgment can be made directly to the appropriate United States Court of Appeals. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c).

SO ORDERED, this 17th day of September, 2026, at Bridgeport, Connecticut.

*/s/ S. Dave Vatti*
S. DAVE VATTI
United States Magistrate Judge